**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff,

v.

SMOKIN' SPUDS, INC. D/B/A MOUNTAINKING POTATOES

and

FARMING TECHNOLOGY, INC.,

Defendants.

**COMPLAINT AND JURY TRIAL DEMAND**

**NATURE OF THE ACTION**

This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.* ("Title VII"), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices on the basis of sex, and to provide appropriate relief to Rachel Cordova, Julie Cordova, Tina Reyes, Barbara Chaparro, and other aggrieved women who were adversely affected by such practices. As alleged with greater particularity below, the United States Equal Employment Opportunity Commission ("Plaintiff" or the "Commission") alleges that Defendants Smokin' Spuds, Inc., d/b/a MountainKing Potatoes ("MountainKing") and Farming Technology, Inc. ("FTI") engaged in unlawful discrimination by creating a hostile work

environment based on sex and by retaliating against those who complained about or otherwise opposed the discrimination, or participated in an investigation or other proceeding under Title VII.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 703(a), 706(f)(1), and (3) of Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e-5(f)(1), and 2000e-5(f)(3), and by Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a.

2. The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the District of Colorado.

3. Plaintiff is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and 706(f)(3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and 2000e-5(f)(3).

## PARTIES

4. At all relevant times, Defendant MountainKing, a Delaware corporation, has been registered and actively conducting business in the State of Colorado, and has a registered agent in Colorado.

5. At all relevant times, Defendant FTI, a Texas corporation, has been registered and actively conducting business in the State of Colorado, and has a registered agent in Colorado.

6. At all relevant times, both Defendants have employed at least fifteen (15) employees.

7. At all relevant times, both Defendants have been employers engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## STATEMENT OF CLAIMS

8. More than thirty days prior to the institution of this lawsuit, Rachel Cordova, Julie Cordova, Tina Reyes, and Barbara Chaparro filed charges with the Commission alleging violations of Title VII by Defendants. All conditions precedent to the institution of this lawsuit have been fulfilled.

9. Since at least 2001, Defendants have engaged in unlawful employment practices at its Monte Vista, CO facility in violation of Section 703(a)(l) of Title VII, 42 U.S.C. § 2000e-2(a)(l).

10. Defendants MountainKing and FTI are an integrated enterprise operating as a wholesale potato company located in the San Luis Valley in southern Colorado at 2455 E. Road 4 North, Monte Vista, CO 81144.

11. Rachel Cordova worked for Defendants from October of 2009 until she was terminated in August of 2010.

12. Julie Cordova worked for Defendants from December of 2009 until she was terminated in June 2010.

13. Tina Reyes worked for Defendants from December of 2009 until she was terminated in August of 2010.

14. Barbara Chaparro worked for Defendants from December of 2001 until she was terminated in November of 2010.

15. Samuel Valdez worked for Defendants over three different time periods, from 1998 to 2000, from 2001 to 2004, and again from June of 2008 to the present.

16. In June of 2008, Samuel Valdez was rehired by Defendants to work as a Production Supervisor.

17. At various times, Samuel Valdez supervised the work of Rachel Cordova, Julie Cordova, Tina Reyes, and Barbara Chaparro.

18. Beginning in or around December of 2009, Rachel Cordova was assigned to report to Samuel Valdez. At all relevant times, Valdez had supervisory authority over Rachel Cordova.

19. While supervising Rachel Cordova, Samuel Valdez made offensive sexual comments and touched Rachel Cordova in sexually offensive ways.

20. Rachel Cordova rejected the sexual advances of Samuel Valdez, and told him to stop his sexual comments.

21. After Rachel Cordova opposed the sexual comments and advances of Samuel Valdez, Valdez retaliated against Rachel Cordova by assigning her to work at the least desirable assignment, an unpleasant sorting station isolated from other workers, and Valdez continued to sexually harass her by following her and inappropriately staring at her from a distance while licking his lips.

22. Rachel Cordova reported the sexual harassment and retaliation by Valdez to members of Defendants' management.

23. Defendants' managers failed to stop the sexual harassment and retaliation, and Rachel Cordova continued to be assigned to the least desirable assignment. Eventually, she became vocally angry at the refusal of one of her supervisors to move her out of that assignment, and was discharged.

24. Julie Cordova began reporting to Samuel Valdez in December of 2009. At all relevant times, Valdez had supervisory authority over Julie Cordova.

25. Soon after being assigned to report to Samuel Valdez, he began making inappropriate sexual comments and gestures toward Julie Cordova, and at one point pulled her into his office, turned out the lights, and forced Julie Cordova onto his lap.

26. Julie Cordova also saw Valdez sexually harass other women employees, and told him repeatedly that she did not like his behavior and wanted it to stop.

27. Julie Cordova was terminated in June of 2010 in retaliation for her opposition to Valdez's sexual harassment of herself and other women employees.

28. Barbara Chaparro was assigned to report to Samuel Valdez during most of her employment with Defendants, beginning in 2001, except during those periods when Valdez was not working for Defendants. At all relevant times during Valdez's employment with Defendant, he had supervisory authority over Barbara Chaparro.

29. Samuel Valdez made inappropriate sexual comments, gestures, and propositions to Barbara Chaparro, and often licked his finger and put it in Ms. Chaparro's ear while sexually propositioning her, throughout the time she reported to him.

30. Tina Reyes began reporting to Samuel Valdez when she first went to work for Defendants in December of 2009. At all times relevant to Ms. Reyes' employment, Valdez had supervisory authority over her.

31. Shortly after Tina Reyes began reporting to Valdez, he began making inappropriate sexual comments, gestures, and propositions to Ms. Reyes, licked his finger and put it in her ear, and inappropriately touched her buttocks and the buttocks of other women as they clocked in for work.

32. Tina Reyes rejected the sexual advances of Valdez.

33. After Tina Reyes rejected the sexual advances of Valdez, he assigned her to the most unpleasant assignment in the plant for a long period of time.

34. Ms. Reyes reported Valdez's inappropriate sexual conduct to managers Adam Gutierrez and C.J. Medina, but the inappropriate conduct did not stop.

35. Because Ms. Reyes wanted to avoid being groped by Valdez, she began to arrive at work late, when Valdez was not standing by the time clock.

36. Eventually, Ms. Reyes was disciplined by supervisor Cecilia Pinon for arriving late, and Ms. Reyes explained to Ms. Pinon that the reason she came in late was to avoid being sexually harassed by Valdez at the time clock.

37. A few days after speaking to Cecilia Pinon about Valdez, Safety Manager Steve Trujillo disciplined Ms. Reyes for arriving at work late, at which time Ms. Reyes reported to Trujillo that the reason for she had arrived at work late, was to avoid being sexually harassed by Valdez at the time clock.

38. When Ms. Reyes reported Valdez's sexual harassment to Trujillo, Trujillo sent Ms. Reyes home for the rest of the day and asked her to write a statement reporting the conduct.

39. Trujillo and C.J. Medina met with Ms. Reyes the following morning, and then told her to go to lunch while they decided what to do about her report concerning sexual harassment.

40. When Ms. Reyes returned approximately forty minutes later, Trujillo told her she was being terminated for being gone too long for lunch.

41. Ms. Reyes' termination was actually because of her reports of sexual harassment by Valdez.

42. The Defendants never took any disciplinary or corrective action against Valdez.

43. Upon information and belief, EEOC states that other female employees were sexually harassed by Valdez and other managers, and were affected by the hostile work environment created by the sexual harassment.

## FIRST CLAIM FOR RELIEF
[Sex Harassment/Hostile Work Environment - 42 U.S.C. §§ 2000e-2(a) and 2000e-5(f)(1)]

44. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

45. Defendants discriminated against Rachel Cordova, Julie Cordova, Barbara Chaparro, and Tina Reyes, in violation of section 703(a) of Title VII, 42 U.S.C. §2000e-2(a), by subjecting them to sexual harassment, and by creating and tolerating a sexually hostile work environment.

46. Defendants discriminated and continue to discriminate against other aggrieved female employees in violation of section 703(a) of Title VII, 42 U.S.C. §2000e-2(a), by subjecting them to sexual harassment, and by creating and tolerating a sexually hostile work environment.

47. The offensive sexual conduct described in the preceding paragraphs was and is sufficiently severe or pervasive to alter the terms and conditions of employment for Rachel Cordova, Julie Cordova, Barbara Chaparro, Tina Reyes, and other aggrieved female employees.

48. The sexual harassment and hostile work environment to which Rachel Cordova, Julie Cordova, Barbara Chaparro, Tina Reyes, and other aggrieved female employees were subjected was perpetrated by one of Defendant's employees with direct supervisory authority over the aforementioned female employees and occurred on a frequent and routine basis over a substantial period of time.

49. Defendant knew or should have known of the sexually hostile work environment because its other supervisors and managers observed it, because of its frequent and notorious nature, and/or because Rachel Cordova, Barbara Chaparro, or Tina Reyes complained about it.

50. Defendant failed to take prompt or effective action to prevent, correct or remedy the sexually hostile work environment.

51. The effect of the practices complained of above has been to deprive of Rachel Cordova, Julie Cordova, Barbara Chaparro, Tina Reyes and other aggrieved female employees of equal employment opportunities, and otherwise adversely affect their status as an employee, because of their sex.

52. The unlawful employment practices complained of above were intentional.

53. The unlawful employment practices complained of above were done with malice or reckless indifference to the federally protected rights of Rachel Cordova, Julie Cordova, Barbara Chaparro, Tina Reyes, and other aggrieved female employees who were aggrieved by the discriminatory practices.

54. As a result of the events and actions described above, Rachel Cordova, Julie Cordova, Barbara Chaparro, Tina Reyes, and other aggrieved female employees were and are being deprived of equal employment opportunities, experienced emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, and were and are otherwise adversely affected because of their sex.

## SECOND CLAIM FOR RELIEF
[Retaliation - 42 U.S.C. § 2000e-3(a)]

55. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

56. Defendants engaged in unlawful employment practices in the State of Colorado, in violation of Section 704 of Title VII, 42 U.S.C. § 2000e-3(a), by retaliating against Rachel Cordova, Julie Cordova, and Tina Reyes.

57. Rachel Cordova, Julie Cordova, and Tina Reyes engaged in protected activity under §704 of Title VII, 42 U.S.C. §2000e-4(a), by opposing what they reasonably believed was an unlawful discriminatory employment practice based on sex.

58. Rachel Cordova and Tina Reyes reported to Defendants' managers the hostile work environment they were subjected to by Valdez.

59. Julie Cordova opposed the hostile work environment caused by Valdez by complaining directly to Valdez about his behavior.

60. Defendants did not take appropriate action in response to the complaints by Rachel Cordova, Tina Reyes, and Julie Cordova.

61. Instead, Defendants retaliated against Rachel Cordova, Julie Cordova, and, Tina Reyes.

62. Defendants, acting through their managers and supervisors, retaliated against Rachel Cordova by allowing the sexually hostile conduct of Valdez to continue; by assigning her to the worst sorting station in the facility, despite Rachel Cordova's objections to such assignment; and by discharging her when she vocally objected to the retaliatory assignment.

63. Defendants retaliated against Tina Reyes by assigning her to the worst sorting station in the facility, and by discharging her after she reported the sexually hostile work environment created by Valdez.

64. Defendants retaliated against Julie Cordova by discharging her in retaliation for her opposition to the sexually hostile conduct of Valdez.

65. The effect of the practices complained of in the forgoing paragraphs has been to deprive Rachel Cordova, Julie Cordova, and Tina Reyes of equal employment opportunities and otherwise adversely affect their status as employees, because they engaged in protected activity.

66. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

67. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Rachel Cordova, Julie Cordova, and Tina Reyes, who were aggrieved by the retaliatory practices.

68. As a result of the events and actions described above, Rachel Cordova, Julie Cordova, and Tina Reyes were and are being deprived of equal employment opportunities, experienced emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, and were and are otherwise adversely affected because of Defendant's unlawful retaliation.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, successors, assigns and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of sex and from retaliating against employees who oppose such discrimination.

B. Order Defendants to institute and carry out policies, practices and programs which provide equal employment opportunities for women, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendants to make whole Rachel Cordova, Julie Cordova, Barbara Chaparro, Tina Reyes, and the other aggrieved female employees by providing appropriate backpay and lost benefits with prejudgment interest, and other affirmative and equitable relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to, reinstatement or front pay where appropriate, job search expenses and any medical expenses, in amounts to be determined at trial.

D. Order Defendants to make whole Rachel Cordova, Julie Cordova, Barbara Chaparro, Tina Reyes, and the class of other aggrieved female employees by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices

complained of in the paragraphs above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

  E. Order Defendants to pay Rachel Cordova, Julie Cordova, Barbara Chaparro, Tina Reyes, and the class of other aggrieved female employees punitive damages for their intentional and/or malicious and reckless conduct described in the paragraphs above, in amounts to be determined at trial.

  F. Grant such further relief as the Court deems necessary and proper.

  G. Award the Commission its costs in this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Dated this ___ day of _____, 2014.

        Respectfully Submitted,

        P. DAVID LOPEZ
        General Counsel

        GWENDOLYN REAMS
        Associate General Counsel

        EQUAL EMPLOYMENT OPPORTUNITY
         COMMISSION
        131 M Street, NE
        Washington, DC  20507

        MARY JO O'NEILL
        Regional Attorney
        Phoenix District Office

        STEVEN MURRAY
        Supervisory Trial Attorney

/s/ *William E. Moench*
WILLIAM E. MOENCH
Trial Attorney
(303) 866-1387
william.moench@eeoc.gov

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Denver Field Office
303 East 17th Avenue, Suite 410
Denver, CO   80203
FAX (303) 866-1375

NOTE: It is sufficient for service on the EEOC that pleadings, notices, and any other court documents be served on the Trial Attorneys.  Duplicate service is not required on the Deputy General Counsel in Washington, D.C.